IN THE UNITED STATES BANKRUPTCY COURT FOR THE
WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| IN RE: | ) |
| | ) |
| DAVID EUGENE CARTER, | ) Case No. 07-61667 |
| | ) |
| Debtor. | ) |

ORDER OVERRULING OBJECTION TO PROPOSED
TREATMENT OF CU COMMUNITY CREDIT UNION'S CLAIM

David Eugene Carter filed this Chapter 13 case on November 13, 2007. On his Schedule A, he listed a parcel of real property located in Buffalo, Missouri, which he owned as a joint tenant with his former spouse. US Bank Home Mortgage (US Bank) and CU Community Credit Union (the Credit Union) were identified as first and second mortgage holders, respectively. The Credit Union initially filed a secured claim in the case (Claim No. 3 on the Court's registry, filed on December 17, 2007), in the amount of $10,407.54, stating that its claim was secured by the Buffalo property. In the Chapter 13 Plan which he filed the same day he filed his Petition, the Debtor proposed to surrender the property "in lieu of the entire debt[s]" of both US Bank and the Credit Union. The Plan proposes a 100% payout to unsecured creditors. No one objected to the Plan, and it was confirmed on January 15, 2008.

Meanwhile, on January 11, 2008, US Bank moved for relief from the stay, and that relief was granted without opposition on February 1, 2008. Thereafter, on February 14, the Credit Union filed an amended claim (Claim No. 6 on the Court's registry) asserting an unsecured claim for $10,632.54.

On April 17, 2008, the Chapter 13 Trustee filed his Notice Allowing/Disallowing Claims, which essentially showed that the Credit Union was to receive nothing under the

Plan, on either of its claims, because the Plan provided that the property was to be surrendered in lieu of the entire debt. The Credit Union objects to that treatment, asserting that it should have an allowed unsecured claim to be paid according to the Plan's terms.

This is a core proceeding under 28 U.S.C. § 157(b)(2)(B) and (L) over which the Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b), 157(a), and 157(b)(1).

I note at the outset that the Credit Union does not dispute that it received notice of the proposed Plan. At the hearing on the objection to the Trustee's Notice, counsel stated that the Credit Union was aware of the proposed treatment, but decided that, rather than spending money to hire an attorney to object to the Plan, it would instead file an unsecured claim.

Section 1325(a)(5)(C) of the Bankruptcy Code permits a debtor to propose a plan which surrenders the property securing an allowed secured claim to such claim holder.[1] And, § 1327 provides that "[t]he provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan."[2] Section 1327(a) essentially codifies the doctrine of res judicata with respect to confirmed Chapter 13 plans.[3] An order confirming a Chapter 13 plan is, therefore, res judicata "as to all issues decided or which could have been decided at the hearing on confirmation."[4]

---

[1] 11 U.S.C. § 1325(a)(5)(C).

[2] 11 U.S.C. § 1327(a).

[3] *In re Dorsey*, 505 F.3d 395, 398 (5th Cir. 2007) (citation omitted).

[4] *Id.* at 398-99 (citation and internal quotation marks omitted).

While confirmed plans are thus generally enforced, courts have recognized two exceptions to that premise. The first exception occurs when enforcing the disputed provision would violate the creditor's due process rights or would contradict other provisions of the Bankruptcy Code and Rules. This exception generally applies where a debtor attempts to do something through a plan which normally requires the filing of an adversary proceeding, such as a discharge-by-declaration of an otherwise nondischargeable debt. Student loans are the most notable and common example of the application of this exception.

It has been widely held that because discharging a student loan requires the filing of an adversary proceeding, which embodies specific procedural safeguards and heightened service of process requirements, and requires an affirmative showing of undue hardship by the debtor, a debtor's attempt to discharge student loans in a Chapter 13 plan, using only the notice required for plan confirmation, violates the creditor's due process rights and other Code and Rule provisions.[5] These courts hold that such a plan provision is not entitled to res judicata effect because the failure to comply with the Code and the Rules deprive the creditor of a full and fair opportunity to litigate the claim, one of the elements of res judicata.[6]

Clearly, the Credit Union's rights were affected by the Debtor's Plan and it was entitled to notice of the proposed treatment before it could be held bound by it. However,

---

[5] *See Banks v. Sallie Mae Servicing Corp. (In re Banks)*, 299 F.3d 296, 301-302 (4th Cir. 2002); *Ruehle v. Educ Credit Mgmt. Corp. (In re Ruehle)*, 412 F.3d 679, 684 (6th Cir. 2005); *In re Hanson*, 397 F.3d 482, 486 (7th Cir. 2005); *Whelton v. Educ. Credit Mgmt. Corp.*, 432 F.3d 150, 154-55 (2d Cir. 2005); *In re Mersmann*, 505 F.3d 1033, 1047-50 (10th Cir. 2007).

[6] *In re Mersmann*, 505 F.3d at 1047-50.

in contrast to a discharge-by-declaration, there is no requirement that a debtor initiate an adversary proceeding or otherwise engage in heightened procedural and notice processes in order to propose to surrender collateral in lieu of a debt. The Credit Union concedes that it received the required notice for plan confirmation. Because a surrender in satisfaction of debt does not invoke the procedural safeguards and heightened service of process required as in an adversary proceeding, I find that the Credit Union's due process rights were not violated. Likewise, the Credit Union has cited no Code provision or Rule violated by a plan proposing to surrender collateral in lieu of a debt and I know of none.

The second exception to the application of res judicata to a confirmed Plan occurs when doing so would be inequitable. For example, in *In re Dorsey*, the debtor's Chapter 13 plan provided for such a surrender, but soon after confirmation he converted to Chapter 7, retained possession of the collateral, and acknowledged an unsecured debt to the creditor in his Chapter 7 schedules. The Fifth Circuit held in that case that "[i]t would be inequitable . . . to bind a creditor to a Chapter 13 plan where the debtor has failed to fulfill his obligations under the plan or where the debtor has abandoned the plan by exercising his right to convert from Chapter 13 to Chapter 7."[7]

The Debtor here has not converted to Chapter 7 or otherwise "abandoned his plan." Although it is not entirely clear, the Credit Union may be attempting to argue here that it would be inequitable to enforce the surrender provision as to it because, the Credit Union

---

[7] *In re Dorsey*, 505 F.3d at 399.

says, the Debtor did not surrender the property to it "in any meaningful manner" and thus failed to fulfill his obligations under the Plan. The Credit Union cites *In re Stone* for the proposition that the creditor's affirmative consent is required to complete a surrender.[8] In reality, the *Stone* court said that "[a] debtor can not surrender collateral in a confirmed plan absent consent of the secured creditor *or approval of the court.*"[9] By confirming the Plan, the Court approved it. More importantly, however, by not objecting to the Plan, the Credit Union is deemed to have consented to it.[10]

The Credit Union next relies on *United States v. White*[11] for the proposition that surrender in lieu is only effective if it is accomplished prior to confirmation. That case is distinguishable for at least two reasons. Most importantly, the issue arose in the context of plan confirmation, which is when the Credit Union should have raised the issue here. Contrary to the situation here, there was no binding plan in *White*. Second, the debtor in that case proposed to surrender to the IRS clothing and personal property upon which the IRS was statutorily barred from levying. The implication was that they did not intend to actually surrender the items to the IRS at all. Accordingly, while the court did say that "the surrender

---

[8] 166 B.R. 621 (Bankr. S.D. Tex. 1993).

[9] *Id*. at 623 (emphasis added). The Court in *In re Stone* held that the debtor's attempt to surrender her residence only to the IRS when senior liens existed, even though she had abandoned the residence, did not constitute a surrender under § 1325(a)(5)(C).

[10] *In re Basham*, 167 B.R. 903, 904 (Bankr. W.D. Mo. 1994) ("[A] number of courts have held that a creditor who fails to object to a Chapter 13 plan is deemed to have accepted it.").

[11] 340 B.R. 761 (E.D. N.C. 2006).

must be accomplished before the plan is approved" because § 1325(a)(5)(C) does not reference the plan,[12] the ultimate holding there was that the particular proposed surrender in that case was unfeasible and prohibited by law.[13]

"The term 'surrender' was contemplated by Congress to be a return of property and a relinquishing of possession or control to the holder of the claim."[14] The statute "does not require a debtor to transfer title by executing and delivering a deed in order to effectuate surrender."[15] The Credit Union does not specify what would constitute a meaningful surrender under these circumstances – where it is a junior lienholder and the Debtor is also surrendering to the senior lienholder – nor did it offer any evidence as to the manner in which the Debtor did or did not surrender the property. I note that the Debtor did not oppose US Bank's motion for relief from stay, and the parties represented at the hearing on this objection that the property had been foreclosed, with US Bank being the successful bidder. US Bank is not complaining that the Debtor has not surrendered the property, and there is no evidence to suggest that the Credit Union was unable to participate in US Bank's

---

[12] *Id.* at 766.

[13] *Id.* at 767. In fact, while surrender certainly should be accomplished promptly after, if not prior to confirmation, an absolute rule requiring complete surrender prior to plan confirmation in every case may not be practicable. For example, in the event that a plan proposing surrender is not confirmed, then the debtor would be precluded from proposing any other treatment of the collateral in a subsequent plan because the property would already have been surrendered.

[14] *In re Stone*, 166 B.R. 621, 623 (Bankr. S.D. Tex. 1993).

[15] *In re Theobald*, 218 B.R. 133, 135 (B.A.P. 10th Cir. 1998) (discussing surrender under § 521).

6

foreclosure had it desired to do so, or that the Debtor is still in possession of it. Thus, while "[i]t is preferable for property which is subject to the claims of several lienholders to be surrendered to all the various lienholders at once and for foreclosure of all liens concurrently,"[16] there is no evidence to suggest that this did not occur here, or that the Debtor has not meaningfully surrendered the property to both lenders.

As a result, the Credit Union has not established that the Debtor has failed to abide by the terms of the Plan, or that it would otherwise be inequitable to apply the terms of the confirmed Plan to the Credit Union.

The Credit Union points to § 506, which provides that a secured creditor's allowed claim is only secured up to the value of the collateral; the remainder of the claim is unsecured. If there is no equity left after a superior claimholder's lien, then the junior lienholder's claim is entirely unsecured. According to the Credit Union, US Bank bought the Buffalo property at its foreclosure sale and the sale price left nothing for the Credit Union. The Credit Union is correct that, had it timely raised the issue, it would have had an unsecured claim pursuant to § 506.

However, that does not affect the res judicata effect of the confirmed Plan. Section 506 simply addresses the determination of the secured status of a creditor's claim. In contrast to a proceeding for nondischargeability, which deals with what happens to a claim after completion of the plan and has nothing to do with the proposals made in the plan itself,

---

[16] *In re Stone*, 166 B.R. at 623.

§ 506 and claim classification are directly related to plan confirmation because that is the entire purpose of a plan: to classify claims and propose particular treatment of the classes. Along those lines, it is noteworthy here that, at the time of confirmation, the Credit Union had an allowed secured claim which, according to the claim itself, was fully secured.[17] The Plan very clearly proposed to treat the claim as such, by surrendering the collateral. If the Credit Union suspected that that was not correct – *i.e.,* if the Credit Union had reason to believe that its claim was wholly or partially unsecured, and did not want to accept surrender in lieu of its claim – then the time to raise that issue was at confirmation.

Although not cited by either party, I would mention that in *Capital One Auto Finance v. Osborn*, the Eighth Circuit indicated, in the context of surrender of a 910-vehicle, that because nothing in § 1325(a)(5) says that an allowed secured claim is satisfied by the debtor choosing the surrender option in subparagraph (C), a proposed surrender leaves the creditor with an unsecured claim for any deficiency to which it would be entitled under state law.[18] Consequently, the Eighth Circuit indicated that a plan which deprives a creditor of a deficiency claim to which it would have been entitled under state law cannot be confirmed over that creditor's objection. Certainly, the Credit Union (and US Bank) could have thus objected to the surrender in lieu provision in the Debtor's Plan to the extent it deprived them

---

[17] At the time of plan confirmation, US Bank's allowed secured claim was $87,951.92. The Credit Union also had an allowed secured claim for $10,407.54 because no one had objected to it. 11 U.S.C. § 502(a) (a proof of claim is deemed allowed unless a party in interest objects to it). The Credit Union's own claim stated that the value of the property was $145,000. It therefore appeared at the time of confirmation that the Credit Union was, in fact, oversecured.

[18] 515 F.3d 817, 821-22 (8th Cir. 2008).

of their deficiency claims. But once again, the issue arose in *Osborn* in the context of an objection to plan confirmation, as it should have here, and nothing in *Osborn* says that a creditor is not permitted to waive its rights to a deficiency and agree to a plan that proposes a surrender in lieu. By failing to object to the Plan, that is what the Credit Union did.

This Court has expressly approved the application of res judicata effect to plan provisions providing for surrender in lieu of the debt. In *In re Basham*,[19] a secured creditor filed a deficiency claim after foreclosing upon a surrendered mobile home, despite the fact that the confirmed plan provided for surrender of the mobile home in full satisfaction of the debt. The creditor argued, as does the Credit Union here, that it could not be bound by the plan since it never agreed to accept surrender of the mobile home in full satisfaction of its claim. The Court disagreed, relying on the plain language of § 1327(a) in holding that a creditor who fails to object to a Chapter 13 plan is deemed to have accepted it and is bound by its terms.[20] The Court expressly held that, when a plan calls for surrender in full satisfaction of a creditor's claim, that creditor is precluded from filing a postforeclosure deficiency claim.[21]

As stated above, plan confirmation is res judicata as to all issues decided *or which could have been decided* at the hearing on confirmation.[22] The treatment of the Credit

---

[19] 167 B.R. 903 (Bankr. W.D. Mo. 1994).

[20] *Id.* at 904.

[21] *Id.* at 904-05.

[22] *In re Dorsey*, 505 F.3d at 398 (emphasis added).

Union's claim, which goes to the essence of plan confirmation, most certainly could have, and should have, been raised at confirmation. Allowing the Credit Union an unsecured claim at this point in the proceedings only illustrates the reason for giving a confirmed plan res judicata effect: as the Debtor pointed out at the hearing, the Plan proposes a 100% payout to unsecured creditors, and this was based on the theory that the surrender to US Bank and the Credit Union was in satisfaction of those debts. Allowing the Credit Union a $10,000 unsecured claim at this point would substantially change the Plan and the Debtor's obligations under it. "There must be finality to a confirmation order so that all parties may rely upon it without concern that actions which they may thereafter take could be upset because of a later change or revocation of the order."[23] Section 1327 and the cases apply the doctrine of res judicata in order to insure that these issues are dealt with at the time of confirmation, when the Court determines whether a debtor is able to fulfill its obligations under the plan as proposed. Because the Credit Union failed to raise the issue of the treatment of its claim at confirmation, it is barred from doing so now.

ACCORDINGLY, by failing to object to the Plan, CU Community Credit Union consented to the proposed treatment and is bound by it. Because the Trustee's Notice Allowing/Disallowing Claims conforms to the provisions of the confirmed Plan, the Credit Union's Objection to it is OVERRULED.

IT IS SO ORDERED.

---

[23] *In re Mersmann*, 505 F.3d at 1047 (citation omitted).

**/s/ Arthur B. Federman**
Bankruptcy Judge

Date: **July 11, 2008**

\*\*\***Leslie Rosenfeld to serve parties not receiving electronic notice**\*\*\*